<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HECTOR SANCHEZ, | |
| Plaintiff, | Civ. No. 06-3660 (DRD) |
| v. | **O P I N I O N** |
| SUNGARD AVAILABILITY SERVICES LP, ET AL, | |
| Defendants. | |

*Appearances by:*

HECTOR SANCHEZ
7-29 Oak St.
Fair Lawn, NJ 07410

    *Pro Se Plaintiff,*

MORGAN, LEWIS & BOCKIUS LLP
by: Diane L. Lisowski, Esq., Sean P. Lynch, Esq., and Richard G. Rosenblatt, Esq.
502 Carnegie Center
Princeton, NJ 08540

    *Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

    Plaintiff Hector Sanchez is a former employee of Defendant Sungard Availability

Services LP ("Sungard").  While at Sungard, Plaintiff was supervised by Defendant Fidel

Cardenas.  Following the termination of his employment on January 10, 2005, Plaintiff filed a

Complaint in the Superior Court of New Jersey for Essex County alleging that Mr. Cardenas discriminated against him on the basis of his nationality and Sungard fired him in retaliation for complaining about that discrimination.  On the basis of those allegations, Plaintiff asserted claims for (1) retaliatory discharge and the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000a et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq., (2) infliction of emotional distress, (3) "breach of contract for reasons of race and national origin, contrary to 28 U.S.C. § 1981," (4) unequal payment in contravention of the Equal Pay Act, 29 U.S.C. § 206(d), (5) breach of implied contract of employment, (6) violation on the part of Sungard of the "progressive disciplinary system established by its own policies, procedures, and practices," and (7) breach of implied covenant of good faith and fair dealing.  (Compl. ¶¶ 17, 19, 23, 27, 29, 33, 37, 39.)  In addition to his claims against Sungard and Mr. Cardenas, Plaintiff asserted causes of action against five unnamed "John Doe" defendants, contending that those individuals, "while acting within the scope of their employment as Plaintiff's superior[s] … aided, abetted, incited, and/or coerced the performance" of the allegedly unlawful acts detailed in his other causes of action.  (Compl. ¶¶ 41-42.)  Based on the federal nature of Plaintiff's Title VII claims, Defendants removed to this Court on August 4, 2006.

Pursuant to Federal Rule of Civil Procedure 56, Defendants now move for summary judgment on all claims.  After reviewing the arguments of both parties, the Court finds that Plaintiff's allegations of discrimination, even when viewed in their strongest possible light, do not rise to the level of severity or pervasiveness required to sustain a hostile work environment claim under Title VII or the NJLAD.  Furthermore, Sungard has articulated legitimate reasons for Plaintiff's termination, and Plaintiff has not demonstrated that those reasons are a pretext for

discriminatory purposes.  Similarly, Plaintiff has failed to produce evidence of sufficiently

outrageous activity on the part of Defendants to support his claim for infliction of emotional

distress.  The remainder of his claims are premised on the existence of an employment contract,

when it is undisputed that no such contract existed and Plaintiff was an "at will" employee.

Therefore, Defendants' Motion for Summary Judgment will be granted and Plaintiff's claims

will be dismissed in their entirety.

## I.  BACKGROUND

Plaintiff was hired as a "Senior Software Specialist" by Comdisco, Inc. in 1999.  Sungard

acquired Comdisco on November 12, 2001, at which time Plaintiff became a Sungard employee.

Plaintiff on December 5th of that year was given a copy of Sungard's Employee Handbook and

signed an Employee Acknowledgment that explicitly outlined his status as an at-will employee,

stating:

> I [] understand that none of the benefits or policies in this
> Handbook are intended by reason of their publication to confer any
> rights or privileges upon me or entitle me to be or remain an
> employee of the Company.  I am aware that this Handbook is not a
> binding contract and is presented to me only to illustrate many of
> the Company's policies and procedures.  I acknowledge that the
> policies and procedures in this Handbook are subject to change at
> any time at the sole discretion of the Company.
>
> I acknowledge and understand that the employment relationship of
> the Company and its employees is on an "at-will" basis.   I
> acknowledge and understand that either the Company or I can
> choose to terminate the employment relationship at any time, with
> or without cause.

(Decl. of Fidel Cardenas, March 13, 2009 ("Cardenas Decl."), Ex. J.)

During his time at both Comdisco and Sungard, Plaintiff was directly supervised by Mr.

Cardenas.  Plaintiff, who is originally from the Dominican Republic, claims that Mr. Cardenas, a

Cuban-American, made various disparaging remarks about his nationality.  Although Plaintiff

claims in his Complaint that the comments started "about two weeks" after he was hired in 1999,

(Compl. ¶ 6), he points to only six specific incidents – over the course of his six-year tenure at

Comdisco/Sungard – in which his nationality served as the basis for discriminatory comments:

- In 1999, while discussing his car with Mr. Cardenas, Plaintiff commented that the odometer had been tampered with.  Mr. Cardenas responded by saying "that's typical of Dominicans." (Pl's Decl. of April 6, 2009, ¶ 6.)

- In 2002, Plaintiff's schedule was modified to require that he work Friday-Sunday each week rather than his previous Monday-Friday regimen.  When Plaintiff inquired as to the reason for the change, Mr. Cardenas allegedly responded that it was "because I'm Cuban and you are Dominican."  (Pl's Dep. 74:3-11, May 9, 2007.)

- In 2003, when Plaintiff spoke to Mr. Cardenas about the possibility of a promotion, he allegedly replied "don't you know that in this company there is no future for Dominicans?"  (Id. 98:3-8.)

- At a 2004 lunch with Plaintiff and a co-worker, Mike Pooler, Mr. Cardenas allegedly stated that "Dominicans are overpaid in baseball." (Id. 137:25-138:6.)

- In a March 29, 2004 e-mail regarding Plaintiff's shifts for the previous weekend, Mr. Cardenas stated that "Hector sometimes counts hours on Dominican time."  In the same e-mail, Mr. Cardenas commented that certain employees had trouble understanding Plaintiff's English. (Cardenas Decl., Ex. H.)

- In a September 13, 2004 e-mail regarding difficulties Plaintiff was having accessing some parts of the Sungard facility due to problems with his electronic security key, Mr. Cardenas stated that "I think Hector spoke in Spanish to the card reader, and it didn't understand."  Plaintiff responded four days later, stating that his key was working properly by that time.  Plaintiff's e-mail ended by saying "[i]ssues closed.  Apologies accepted." (Id., Ex. I.)

In addition to disparaging remarks about his Dominican nationality, Plaintiff claims for

the first time in his submissions relating to the pending Motion for Summary Judgment that Mr.

Cardenas sent "other racist e-mails mention[ing] the Iraqi Prisoner's Scrotum and suggesting the

disappearance of Arabs from Earth."  (Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Plaintiff also alleges in

his brief that "[o]n October 15, 2004 I received an offensive racist e-mail from [Mr. Cardenas] with pictures of Afro-Americans." (Id. at 3.)

Although the allegations contained in Plaintiff's Complaint relating to his Title VII and NJLAD causes of action were limited to discrimination on the basis of nationality, Plaintiff now claims that he was also the victim of sexual harassment. That claim appears to be based on three incidents. Plaintiff maintains that he received e-mails from Mr. Cardenas containing "a slide show of obscenity," including photographs of nude women, and "an offensive video of a man peeing[1] in a swimming pool" on September 5, 2002 and February 4, 2003, respectively. Additionally, Mr. Cardenas on January 7, 2005 sent an e-mail to Plaintiff and seventeen other Sungard employees informing them that "the intent is to go balls to the wall" on an upcoming project.[2] (Cardenas Decl., Ex. F.)

Defendants contend that Plaintiff was terminated for non-discriminatory reasons. In support of that argument, they point to three incidents in which Plaintiff clashed with Mr. Cardenas and other Sungard employees during the month before his termination. On December 22, 2004, Mr. Cardenas reprimanded Plaintiff for failing to carry out his duties, stating in an e-mail that "I don't want to see you sitting at your desk while everyone else is busting their butt

---

[1] It appears that the term "peeing" is used in this instance as a colloquialism for "urinating."

[2] In contending that Mr. Cardenas's use of the phrase "balls to the wall" constituted sexual harassment, Plaintiff apparently construes the term "balls" to be a colloquialism for "testicles." It seems, however, that the expression "balls to the wall" does not refer to any portion of the anatomy. Rather, it originated as a euphemism for "full throttle" used among jet pilots; in order to quickly accelerate an aircraft, a pilot pushes the throttle lever, which is topped by a "ball," forward until it touches the instrument panel, or "wall." Jesse Sheidlower, *Balls in the Air: Where Does the Expression "Balls to the Wall" Come From?*, Slate, Feb. 10, 2006, http://www.slate.com/id/2136001/. The Court is aware, however, that the expression is widely believed to carry an anatomical connotation. See Id. ("[I]t's likely that the possibility of an anatomical interpretation has helped the expression gain wider use."); Urban Dictionary, http://www.urbandictionary.com/define.php?term=balls+to+the+wall. Therefore, bearing in mind the requirement that it consider the evidence in the light most favorable to the Plaintiff when deciding the pending Motion for Summary Judgment, the Court will proceed under the assumption that Mr. Cardenas's use of the expression was sexually charged.

working on stuff.  Get busy and stay busy." (Cardenas Decl., Ex. D.)  During the first week of January, 2005, Plaintiff was involved in a verbal altercation with another Sungard employee, which was eventually broken up by Mr. Cardenas.  (Pl.'s Br. Opp'n Mot. Summ. J. 4.)

The final incident, which Defendant's claim led directly to Plaintiff's discharge, occurred on January 10, 2005.  That day, Plaintiff arrived at the Sungard facility at approximately 6:15 a.m., but found that his electronic security key did not work and he was unable to access the building.  After being admitted by a co-worker, Plaintiff had problems accessing the different areas within the facility due to his malfunctioning key.  Approximately 20 minutes after being admitted to the building, he left his key with security personnel, told them to call him when they had fixed the malfunction, and went home.  See (Cardenas Decl., Ex. E.)  Plaintiff received a call from Sungard at noon requesting that he return to work.  When he did so, he was informed by Mr. Cardenas that he was being terminated for insubordination and leaving the facility without authorization.  (Id. 4-5); (Cardenas Decl., Ex. E.)

## II.  DISCUSSION

Defendants assert two main arguments in support of their Motion for Summary Judgment.  First, they contend that Plaintiff has failed to produce sufficient evidence of discrimination to support his hostile work environment, retaliatory discharge, and infliction of emotional distress claims.  With respect to Plaintiff's other causes of action – all of which are premised on the existence of an employment contract – Defendants claim that they are entitled to summary judgment because Plaintiff was an at-will employee.  In order to address those arguments, the Court must examine each of Plaintiff's claims in light of the standard of review applicable to requests for summary judgment pursuant to Federal Rule of Civil Procedure 56.

6

**A.  Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

**B. Title VII and NJLAD Claims**

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). With respect to discrimination on the bases of national origin and sexual harassment, the NJLAD is virtually identical, and prohibits "an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex … of any individual, … to refuse to hire or employ or to bar or to discharge … from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. § 10:5-12(a). In fact, the Supreme Court of New Jersey "has frequently looked to federal precedent governing Title VII" when "construing the terms of the [NJ]LAD." Lehmann v. Toys R Us, Inc., 626 A.2d 445, 452 (N.J. 1993); see also Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 907 (N.J. 1990) ("In outlining approaches and infusing discrimination claims under the LAD with substantive content, we have adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII.").

*i.    Hostile Work Environment*

Given the similarities between Title VII and the NJLAD, it comes as no surprise the elements of a hostile work environment claim vary little between the state and federal laws. Under the NJLAD, a plaintiff must demonstrate that "complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Dev. Corp, 803

A.2d 611, 625 (N.J. 2002).  In order to prevail on a hostile work environment claim under Title

VII, "a plaintiff must show: (1) that he or she suffered intentional discrimination because of [a

protected characteristic]; (2) the discrimination was pervasive and regular; (3) the discrimination

detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a

reasonable person of the same [characteristics] in that position; and (5) the existence of

respondeat superior liability."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir.

1996).  Thus, both statutes require that a plaintiff demonstrate that he or she suffered

discrimination that was "severe" or "pervasive."

       The requirement that a plaintiff demonstrate severe or pervasive discrimination "takes a

middle path between making actionable any conduct that is merely offensive and requiring the

conduct to cause a tangible psychological injury."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

(1993).  The "mere utterance of an epithet which engenders offensive feelings in an employee

does not sufficiently affect the conditions of employment to implicate Title VII" or the NJLAD.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted).  To the

contrary, courts "determine whether an environment is sufficiently hostile or abusive by looking

at all the circumstances, including the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance."  Faragher v. City of Boca

Raton, 524 U.S. 775, 787-88 (1998) (internal quotations and citations omitted); see also

Shepherd, 803 A.2d at 622 (enumerating the same factors for NJLAD claims).  Discriminatory

"conduct must be extreme to amount to a change in the terms and conditions of employment."

Faragher, 524 U.S. at 788 (The "standards for judging hostility are sufficiently demanding to

ensure that Title VII does not become a 'general civility code.'").  Thus, "'simple teasing,' off-

hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788.

Viewed in light of that standard, the incidents of discrimination alleged by Plaintiff are not sufficient to sustain his hostile work environment claim.  Mr. Cardenas made six comments relating to Plaintiff's Dominican nationality over a period of six years.[3]  During that time Mr. Cardenas also sent Plaintiff three racially-charged e-mails: one "mention[ing an] Iraqi prisoner's [s]crotum," one "suggesting the disappearance of Arabs from Earth," and one that included "offensive … pictures of Afro-Americans."  (Pl.'s Br. Opp'n Summ. J. 2-3.)  While those messages were undoubtedly objectionable, they do not appear to have been directed at the Plaintiff because of his nationality or any other protected trait.  Furthermore, Plaintiff admits that he did not seek redress for any of the aforementioned discriminatory incidents under the company's non-discrimination policy, and on at least one occasion responded to an e-mail from Mr. Cardenas without acknowledging the allegedly-discriminatory comments contained therein. See (Cardenas Decl., Ex. I.)  Plaintiff has not asserted that the complained-of conduct was physically threatening or that it interfered with his ability to perform his duties.  To the contrary, Plaintiff stated in his Complaint that he was a model employee and "was routinely applauded for his great teamwork and willingness to both come in early and stay way beyond his normal working hours in order to satisfy the company and its clients."  (Compl. ¶ 5.)

---

[3] Defendants argue that the majority of the discriminatory incidents complained of by Plaintiff are time-barred under the NJLAD's two-year statute of limitations, while Plaintiff argues that those events are admissible as part of a "continuing pattern of discrimination."  Because the Court finds that the incidents, even if admissible, were not sufficiently pervasive or severe to alter Plaintiff's terms of employment, the question of whether those incidents are time-barred need not be addresssed.

Nor do the examples of alleged sexual harassment pointed out by Plaintiff, either individually or in combination with the aforementioned comments regarding Plaintiff's nationality, constitute sufficiently pervasive discrimination to implicate Title VII or the NJLAD. Two of the three computer files sent by Mr. Cardenas that form the basis for Plaintiff's sexual harassment allegations – "a slide show of obscenity" and "an offensive video of a man peeing in a swimming pool" – appear to have been tasteless and boorish attempts at humor.  While such behavior in the workplace is inappropriate, it does not appear that Mr. Cardenas meant his e-mails as a sexual advance or intended to discriminate against Plaintiff on the basis of a protected characteristic by sending them.  Similarly, Mr. Cardenas's use of "balls to the wall" in an e-mail to Plaintiff and seventeen other individuals did not render Plaintiff's work environment hostile or effect a change in the terms of his employment.  From the context of that e-mail, it is clear that the expression, while crude, was not used in a sexual context but rather was meant to convey to Sungard employees that the upcoming project would result in a higher-than-normal workload. See (Cardenas Decl., Ex. F.)  Therefore, the court finds that Mr. Cardenas's discriminatory behavior was not sufficiently severe or pervasive "to amount to a change in the terms and conditions of employment," Faragher, 524 U.S. at 788, and will grant summary judgment on Plaintiff's hostile work environment claim.

### ii.   *Retaliatory Discharge*

Plaintiff's allegations of discrimination are also insufficient to sustain his retaliatory discharge claim.  "To establish a prima facie case for retaliatory discharge, a plaintiff must show: (1) that she engaged in a protected activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge." Amon, 85 F.3d at 1085.  Plaintiff concedes that he never filed a

grievance with Sungard management relating to Mr. Cardenas's discriminatory comments, but contends that he stated on January 7, 2005 while having lunch with his co-workers that he was being "discriminated, harassed, and bull[i]ed." (Pl.'s Dep. 200:7-22.)  None of the individuals who attended the lunch were able to recall Plaintiff's statements, and there is no evidence that Mr. Cardenas or Sungard management were aware of the conversation.  Since none of the individuals responsible for choosing to discharge Plaintiff were aware of his complaints of discrimination, he has failed to establish that his termination was caused by engagement in protected activity, and thus has not established a prima facie case for retaliatory discharge.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (holding that complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute "protected activity").  Therefore, the Court will grant summary judgment on Plaintiff's retaliatory discharge claim.

Even if the Court construed Plaintiff's sparse allegations as sufficient to establish a prima facie claim for retaliatory discharge, summary judgment would be appropriate because Plaintiff has failed to rebut Defendants' contentions that his termination was based on non-discriminatory factors.  Under the framework articulated by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), once a plaintiff establishes a prima facie case for retaliatory discharge, the burden of production shifts to the defendant to show that there was a legitimate, non-discriminatory explanation for the termination.  If the defendant makes such a showing, the plaintiff must submit evidence that that explanation is pretextual – i.e., evidence that would cause a reasonable factfinder to disbelieve the employer's articulated reason, or believe that an invidious discriminatory reason was more likely than not a

determinative factor in the employer's action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 215 (3d. Cir. 2000).

Defendants have presented evidence that the termination in this case was motivated by non-discriminatory considerations.  During the month before his termination, Plaintiff was reprimanded for dereliction of his duties and was involved in an altercation with a co-worker.  On the day he was terminated, he left work without authorization.  Thus, Defendants claim that Plaintiff's discharge was not the result of discriminatory motives, but rather the culmination of a pattern of insubordination and failure to perform his work with sufficient alacrity.  Plaintiff has offered no evidence to rebut that claim.  In fact, the last of the six incidents of discrimination on the basis of his nationality that Plaintiff contends demonstrate the unlawfulness of his termination occurred on September 13, 2004, six months before his discharge.  Therefore, the Court finds that Plaintiff has not proven that Defendants' non-discriminatory explanation for his termination was pretextual, and will grant summary judgment on the retaliatory discharge claim.

## C.  Infliction of Emotional Distress

Plaintiff's contentions of discrimination are also insufficient to sustain his claim for infliction of emotional distress.  Under New Jersey law, such a claim must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts ("Restatement") § 46, Comment (d) (1965)).  Additionally, "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it."  Id. (internal quotations omitted).

13

Having already decided that the discriminatory comments by Mr. Cardenas were not so severe or pervasive to alter the terms of Plaintiff's employment, the Court finds that those comments, although inappropriate, were not sufficiently "outrageous in character" to sustain his claim for infliction of emotional distress.  Furthermore, Plaintiff has presented no evidence, other than assertions that he was "humiliated," that he suffered distress so severe that no reasonable man could be expected to endure it.  See Id.  Therefore, Plaintiff has failed to prove the necessary elements to assert a cause of action for infliction of emotional distress and summary judgment will be granted on that claim.

**E.  Unequal Payment**

In his Complaint, Plaintiff states that Sungard compensated him "at a lesser rate than other employees similarly situated … contrary to the Equal Pay Act, 29 U.S.C. § 20[6(d)]." (Compl. ¶ 29.)  That statute "prohibits differential pay for men and women when performing equal work except where such payment is made pursuant to one of the four affirmative defenses" enumerated therein.  Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (internal quotations omitted).

Plaintiff has not shown that he was paid less than similarly-situated female employees of Sungard.  In fact, he has submitted no evidence relating to the compensation of any other employee of that company.  In the absence of such evidence, no reasonable factfinder could conclude that any disparity in pay existed, much less that such a disparity was motivated by Plaintiff's sex.  Therefore, the Court will grant summary judgment on Plaintiff's unequal payment claim.

**F.  Contract Claims**

The remaining claims – breach of contract for reasons of race and national origin; breach of implied contract of employment; violation on the part of Sungard of the "progressive disciplinary system established by its own policies, procedures, and practices;" and breach of implied covenant of good faith and fair dealing – all presume the existence of an employment contract between Plaintiff and Sungard.  It is undisputed that Plaintiff was an at-will employee and no such contract existed.  Therefore, the Court will grant summary judgment on the aforementioned claims.

### III.  CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment is granted and Plaintiff's claims are dismissed in their entirety.

The Court will enter an order implementing this Opinion.


 **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: May 5, 2009